Please rise. This court is now in session. Please be seated. Mr. Clerk, we will call the next case. 314-0574, People of the State of Illinois, added to Thomas Dorado v. Jeff Gale, appealed by Gavin Stoll. Ms. Stoll. Good morning, Your Honors, and may it please the Court. My name is Catherine Stroll, and I represent the defendant appellant in this matter, Mr. Jeffrey Allen. I'm also with the Office of the State Appellate Defender. Mr. Allen was convicted of possession of controlled substance and sentenced to 10 years' imprisonment. He's only raised one issue in this appeal, and that's whether the motion to suppress should have been granted below. Because the contraband which led to his arrest was the product of an illegal Terry frisk. I'd like to start with when the officers arrived at 810 West Main and found defendant present. Since Judge Ryan found and defendant has conceded that both the stop and the frisk were justified, I'd like to go straight into an analysis of the scope of the frisk, which is where Officer Pinter ran afoul of the Fourth Amendment. After doing that, I'd like to address the State's probable cause argument, which they raised in the reply brief. Moving to Terry. During the pat-down, Officer Fisher immediately discovered that the bulge that gave rise to their safety concern was a cell phone. The pat-down continued, and Officer Pinter discovered a bulge at the cuff of defendant's sweatpants. Officer Pinter testified he did not know what the bulge was, and he just wanted to find out what it was. He also testified it was 2 to 3 inches in size and that it floated around. Upon removal of the bulge, which was an unidentified object to Officer Pinter at the time of removal, Officer Pinter discovered that it was a bag of what appeared to be drugs. And, in fact, it was a bag containing 4.9 grams of cocaine. 4.9 grams of cocaine is the approximate weight of one U.S. nickel. In analyzing whether the scope of a Terry frisk remained in its permissible bounds, there are two lines of analysis depending on whether an officer believes the object he's detected is a weapon or could be used as one, or whether he's determined it's contraband through his plain touch. Since the state does not allege that Officer Pinter thought the object was contraband, I'd like to confine my remarks to a weapons analysis. Under a weapons analysis, people v. Rixey established that in order for an officer to remove an object that may be a weapon, the officer must both believe the object is a weapon prior to its removal and articulate a basis for that belief. We have nearly contradictory testimony to what is required for removal of an object. Officer Pinter testified he could not tell the object wasn't a gun. He could not tell the object wasn't a knife. He could not tell what the object was. He simply wanted to find out what it was. People v. Rixey also established that it is never permissible for an officer to remove an object to satisfy his mere curiosity, which, given Officer Pinter's testimony, appears to be what Officer Pinter was doing. Further, he never articulated a belief that the object was a weapon, and the articulation of a belief that an object is a weapon is necessary for the search to stand, if a court finds that testimony reasonable. The state, nonetheless, argues that because the object could have been potentially used as a weapon, that its removal should stand, the search was valid. The state relies on Professor Lefebvre for criteria in establishing whether it's reasonable for an officer to remove an object, which he is uncertain of what it is, but which he believes could be used as a weapon. Under Professor Lefebvre's criteria, an object which is soft may never be removed. An object must be hired in the first place and then further inquiry into whether the size or density of the object is required in terms of whether it would be reasonable for an officer to believe the object could be used as a weapon. With our facts, clearly 4.9 grams of cocaine, again a very lightweight, and 2 to 3 inches in size, is both soft and certainly not hard if size or density doesn't lend one to believe that it could possibly be used to pose danger. Again, Officer Pinter saying he could not tell it wasn't a gun, and he could not tell it wasn't a knife. It simply isn't credible given the mass and shape of the object. Because Pinter's search fails under a Terry analysis, both under the weapons analysis and the plain touch analysis, I'd like to move to the state's argument that even if this court agrees that the Terry frisk was impermissible in scope, that the search was still valid because both officers had three separate grounds to arrest defendant. And those were for trespass, resisting, and obstructing. Defendant was not arrested for trespassing, he was not arrested for resisting, and he was not arrested for obstructing. All three of those alleged misdemeanors occurred prior to his arrest, which was for contraband, possession of an illegal substance. I'd like to make a point from People v. Lee, one of our Supreme Court cases, which is relevant to the one that I just made, and because I think the precise language is very important, I'd like to read the passage out loud. There, the court said, The lawfulness of defendant's warrantless arrest depends on its justification at the time it was made, and the discovery of cocaine upon search incident to arrest does not relate back to operate as a justification for the arrest. Essentially, the case is saying that a court cannot give officers the benefit of an arrest they never conducted or performed, or put another way, that officers cannot have the benefit of a search incident to a non-arrest. Instead, probable cause to arrest had to have existed prior to the arrest, and had to have been the basis for the arrest. The basis of the arrest in our case, again, was contraband, and Mr. Allen was arrested for possession of a controlled substance. So you would be here if he was arrested on trespass? If he was arrested on trespass and probable cause was established for trespass, we may be here. But we would also contend that there was no probable cause for trespass. Why is that? For a number of reasons. First of all, the record is insufficient to support that. What the officers had in the case of trespass was an allegation by an individual who the officers testified was a known drug user, and with whom they were familiar from their profession, saying somebody was at 810 West Main who refused to leave. Who had established it was this complainant's home, dwelling? Not based on the record, no. And the officers arrived, they found the defendant sound asleep. They woke him up and conducted no investigation into whether he was on the lease, whether he'd been asked to leave, just nothing. They're merely taking Aaron Farrell's word at face value. However, the officers did say... Which they could have done. Well, there's a little more required than just taking a tip at face value, even a citizen's tip. Officers are typically required to do some independent corroboration or investigation and questioning in order to raise their level of reasonable suspicion to probable cause. In our case, as Judge Ryan found, the level of suspicion they had was just one that justified a tariff risk. Not probable cause to arrest for trespass. Again, there was no complaint filed, no complaint signed, and no charge filed for trespass. I would contend that because people of the late 2005 Illinois Supreme Court case prohibits a search for a justified later approach to probable cause, the officers in our case missed the boat. Mr. Allen would have had to have been arrested prior to the search for trespass obstructing or resisting. Regardless of what Lee says, the officers did not have probable cause for any of those three infractions. As far as resisting goes, the relevant statute requires that a person knowingly resists or obstructs the presence of a peace officer of any authorized act within his official capacity. It's not clear what Allen was resisting here, since knowingly is an element of the statute. Mr. Allen was ordered to stand up, and Mr. Allen stood. Immediately upon standing, both officers grabbed him and handcuffed him. The entire time from the officers' arrival to when the drugs were found was less than two minutes. The officers did testify, he did sort of try to pull away when the officers went to handcuff him, but they never testified that they told defendant, we're going to handcuff you. You are under arrest. Don't move so we can do this. It shouldn't be anticipated that the defendant should know what is coming next in the officer's procedure or what is in their head. He didn't knowingly resist anything. Furthermore, the very sort of negligible, minuscule reflex to pull away when two people are grabbing at you I don't think would be enough to constitute resisting, even if he knew that he was resisting something. As far as obstructing, it's not clear what act Mr. Allen was obstructing. He is required to knowingly obstruct an official act performed by a peace officer. What would be the official act under these circumstances? There isn't one. Officer Pinter was standing watch four feet away, so he was not conducting an act. Meanwhile, Officer Pinter was standing watch four feet away while Officer Fisher testified that he was continuing to call in wants and warrants and investigate whether there was... Is it arguable that the official act is a direction for him to not do something, to stop doing something? I don't know that a command is an act. So you don't know if it is or isn't? I don't believe a command is an act. Or you don't think it is? Well, I believe an act would require something like an officer attempting to handcuff him. I don't believe a command is an act, no. If it were to be an act, when they told him to stop moving his hand, he did. He moved his hand towards his left waistband two to three times, it's unclear how many. And this is after he'd been jarred awake at 6am, flashlight in his face, without being told really much of the reason why the officers were there, except that... Well, the officers identified themselves. They said police. Right. So he was aware there were police officers. He was aware that there were police officers, yes. And they told him not to be reaching there, and he stopped immediately? Well, he was reaching there, and they said stop, and so he did. So you're saying he obeyed all commands of the officers? Yes. Okay. And to conclude, I would just point out that to decide to analyze this under a probable cause analysis would be sort of essentially to sweep under the illegal Terry frisk, which is backed up by Terry itself, all of its progeny, and the many cases relied on in both the opening and the reply brief. And it would be to send a message to the officers that they could either ignore or disregard the law. Defendant would ask that the exclusionary rule be applied, and that the officers, and that the evidence is suppressed based on the illegal Terry frisk. Because it was illegal in scope, the frisk was illegal in scope, and because the officers both left probable cause to arrest defendant, and did not arrest him for any of the three misdemeanors the state raises, defendant respectfully requests this court to find that the motion to suppress evidence should have been granted, and that defendant's conviction be vacated outright. Thank you. Thank you. He was convicted not of just possession, I think you said earlier, but it was with intent to deliver, wasn't it? Yes, I believe it was. I don't recall if it was possession with intent to deliver, or just possession of a controlled substance. Okay. I think it might have been with intent to deliver, I don't recall. Okay. Thank you. Mr. Rado. May it please the court, good morning, your honors, counsel. With due respect, that is not exactly what happened in this case. The officers initially were told by Mr. Farrell that at his apartment there was somebody who was not wanted, and later in the testimony it was the defendant that was not wanted. They went to the apartment to investigate. It said police woke up the defendant. The defendant was reaching on his left side. Officers said, don't do that. They're concerned for officer's safety. They're authorized for officer's safety to command them not to do something, particularly when it's a furtive movement that could be interpreted as potentially dangerous. The defendant did not stop. They ordered him to stand up. He stood up. He continued to reach forward to his left-hand side. The officers told him, don't do that. Officer Fisher grabbed his wrist to stop him from doing that, and the defendant pulled away. Officer Pinter then joined in, grabbed the defendant, and the defendant pulled away. That's the testimony of the officers. It's undisputed testimony. The officers then took a moment to get him under control to handcuff him. At that point, assuming the trial court found him credible and found these to be facts, correct? Yes. Okay. At that point, not going beyond that point, is there probable cause to arrest? Yes. The probable cause for resisting, because they had an official act that they were allowed to do, was to command him for officer's safety not to keep reaching for his waistband. Grabbing the defendant to restrain him from reaching for his waistband. We don't have that. You're trying to say that that's probable cause to arrest for resisting. Correct. And it doesn't matter what he's later charged with. That is correct. Is your position. So is this a search incident to arrest? Our citation to Brandon is that it was, it is, that doesn't matter. If the officers had probable cause to arrest him for an offense, they're justified in searching him and would have been justified in searching him for that. And it's an objective test whether or not the officers had it. It's not subjective. It's not whether or not the defendant was charged with those offenses. But your position is there was probable cause to arrest at that point for resisting a police officer. Correct. And then your position is that they were within their right to search incident to that very arrest. Correct. That's your position. Correct. And what's the scope of that search? The scope of that search is his person. They can search his person, incident to arrest for any weapons or contraband because they're going to take him into custody. Were we beyond Terry at that point? We're beyond Terry at that point. Yeah, that's not, Terry's no longer applying. We no longer have to worry about the applicability of, well, was this squishy or hard? Now the trial court didn't go down that line, did it? No, it didn't. He, well, he stopped at the Terry analysis. The state did argue regarding probable cause. Also argued that at the motion to reconsider hearing, specifically addressing those three charges that could have been brought. So, but the court simply said, well, my findings were fine on that Terry. So did not address the state's argument on that point. It was raised by the state. And as far as the problem, so really the Terry analysis is kind of irrelevant at this point. But we would still say that the officer did not know, as counsel pointed out, never said I knew that this was not a weapon. Officer safety, he's allowed to investigate to make sure that it's not a weapon. Just because something is not hard doesn't necessarily mean it's not a weapon. I mean, poisons can be soft. Other items can be potentially dangerous that are not hard. Sorry? Yeah, that's what I said. Anthrax. Anthrax. So I believe the brief otherwise addresses the issues of the case. So if there's no other questions, we'll ask. Why is he charged with possession with intent to deliver? Opposing counsel says this is the size of a nickel. You know, that wasn't really addressed in any fashion. So I don't know. I mean, 3.9 grams. My guess is that it was maybe perhaps how it was packaged. But I don't recall how it was packaged. But yes, it was possession with intent to deliver is what he was convicted of. Why? That issue is not raised and therefore it was waived. He received a 10-year sentence. So my guess is he is not, even though it's a 2013 case. And then my guess is he's probably still there. And for all the reasons we asked that this court confirm. Thank you, Your Honor. Thank you, Mr. Radovich. Ms. Stroh? The state's main argument is that because there was probable cause to arrest, for three separate infractions, then the search stands as incident to one of the arrests that never happened. That is in complete contradiction to People v. Lee. And if you'd excuse me, I'd like to read that quote one more time. Because People v. Lee is a Supreme Court case. The case that, the one case that the state cites for the proposition that an arrest can be made if there's probable cause for a different arrest that wasn't made, or that their search can be conducted for, based on an arrest that was never made but that probable cause existed for, relies on just People v. Brannon. And that's a 2013 Second District case. And when People v. Brannon makes that point in their case, they cite no authority whatsoever. When People v. Lee, the Supreme Court case, said that the lawfulness of defendants' warrantless arrest depends on its justification at the time it was made, and the discovery of cocaine upon search incident to arrest does not relate back to operate as a justification for the arrest, it relied on two cases itself, which also support the proposition that the basis for the arrest had to have existed prior to the arrest. There's no requirement that it be arrested? Pardon me? There's no requirement that it be arrested for the trespass or resisting? No, his arrest, the warrantless arrest depends on the justification at the time it was made. So, Officer Painter justified the arrest that he made of Mr. Allen as one being possession of a controlled substance. He did not make the justification that the arrest was for trespass, obstructing, or resisting. Going back to the resisting, the alleged resisting, again, the state hasn't addressed the knowingly element of that. As I said earlier, Jeff Allen didn't knowingly resist anything. There was a quick interaction. He was actually complying with orders. He was not told what was going to happen next. When two people grab at you, it is a natural reaction to sort of pull away. That's not an intentional, flagrant, knowing disregard for a command or whatever the officer's intent was. In terms of counsel saying that because Officer Painter didn't know it wasn't a gun that he was justified there for in removing it because it potentially could have been a weapon, that argument fails. The officer would have needed to have testified why he believed it was a weapon and articulated a basis for that. It's not enough to say, I don't know what it is. That's people v. Rixey. That's removing an item to satisfy the officer's curiosity. We actually have analogous testimony to Officer Painter's in People v. Goody where the officer says, I couldn't tell it wasn't a weapon. In that case, the court held that it wasn't reasonable for the officer to think that a mushy package, a bag of marijuana could have possibly created the tactile sense similar to a gun or a weapon. It's not reasonable to think that a 2-3 inch bulge that weighs essentially nothing could possibly be used to harm an officer. However, if it were to have been reasonable, Officer Painter would have had to expand it on why and then the court would have had to make a determination as to whether they believed him. I have nothing further. Okay, thank you. Thank you. That's both of your arguments today. We will take this matter under advisement of the Batchelor at the written disposition. I will now take a short recess for lunch. Thank you, Karen. 3.15. Please rise. This court is now in recess.